IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GKD-USA, INC.                    *
                                 *
v.                               *     Civil Action No. WMN-15-1380
                                 *
COAST MACHINERY MOVERS           *
                                 *
   *    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

**MEMORANDUM**

Before the Court is Defendant Coast Machinery Movers'
"Motion to Dismiss in Favor of Arbitration, or in the
Alternative to Dismiss for Improper Venue, for Lack of Personal
Jurisdiction, or to Transfer Based on Forum Non Conveniens."
ECF No. 13.  Also pending is a Motion to Remand filed by
Plaintiff GKD-USA, Inc.  ECF No. 16.  Upon a review of the
papers filed and the relevant case law, the Court determines
that no hearing is necessary, Local Rule 105.6, and that
Defendant's motion should be denied, Plaintiff's motion should
be granted, and that this case will be remanded to the Circuit
Court for Dorchester County, Maryland.

The relationship between Plaintiff and Defendant is
potentially governed by three different agreements and each of
those agreements contains a provision that differs as to the
forum in which disputes between the parties should be resolved.
At issue in the pending motions is which of those provisions

govern the instant dispute.  The relevant factual background
follows.

This dispute arises out of a construction project on a
large wind tunnel located in Hawthorne, California (the
Project).  The tunnel is owned by Northrop Grumman Systems
Corporation (Northrop) and is equipped with 7 flow conditioning
screens which are approximately 37-feet in diameter and help to
reduce wind turbulence during the testing of aircraft.  The
object of the Project was to remove and replace those screens.
Defendant is the California based company hired by Northrop to
lift, disassemble, and reassemble the tunnel.  The 24-page Prime
Contract between Northrop and Defendant dated April 23, 2014,
provides that: "Either party may litigate any dispute arising
under or relating to this order.  Such litigation shall be
brought and jurisdiction and venue shall be proper only in a
state or federal district court in Los Angeles County."  ECF No.
13-5 ¶ 13.  The Prime Contract also provides that "[t]his Order
and any dispute arising hereunder shall be governed by the
substantive and procedural laws of the State of California,
except, however, that California's Choice of Law provisions
shall not apply."  Id. ¶ 29.

Defendant, in turn, hired Plaintiff, a Maryland based
company, to manufacture and install the flow conditioning
screens.  The screens were actually manufactured in Germany by

2

one of Plaintiff's affiliates and shipped directly to California but Plaintiff's personnel were in California for about three weeks to install the screens.  The specifications for the screens and the scope of Plaintiff's installation duties are set out in a 29-page Subcontract Agreement, Subcontract No. 14-17240-050501-1, which is dated April 29, 2014.  That Subcontract Agreement provides that:

> If, at any time any controversy shall arise between CONTRACTOR and SUBCONTRACTOR regarding anything pertaining to this Agreement and which the parties hereto do not promptly adjust and determine . . . then . . . [t]he controversy shall be submitted to and determined by arbitration in the City first above named under the Construction Industry Arbitration Rules of the American Arbitration Association, then obtaining an AWARD, the parties hereto agree to be bound by the Award in such Arbitration.
>
> In addition, SUBCONTRACTOR shall be bound to CONTRACTOR to the same extent CONTRACTOR is bound to OWNER, by all terms and provisions of the Prime Contract and be expressly bound by any provision thereunder to arbitrate.

ECF No. 13-6, Art. 27.  The "city first named above" is South El Monte, California, which is where Defendant's administrative offices are located.

According to Plaintiff, notwithstanding its proper installation of the screens, Defendant has refused to pay Plaintiff an outstanding balance of $155,904.09.[1]  To recover

---

[1] Defendant maintains that problems with three of the screens have prevented the tunnel from being fully functional.  As a result, it has had to hire a new company to make repairs to the

that outstanding balance, Plaintiff filed this suit in the
Circuit Court for Dorchester County, Maryland.  Defendant timely
removed the action to this Court asserting this Court's
diversity jurisdiction under 28 U.S.C. § 1332.  Defendant then
filed the instant motion to dismiss arguing that the dispute
must be submitted to arbitration under the arbitration provision
in the Subcontract.  In the alternative, Defendant argues that
this action must be dismissed for lack of personal jurisdiction
in that Defendant is a California company with no physical
presence in Maryland and its only contact with Maryland being
this single contract with Plaintiff.  As a third alternative,
Defendant suggests that this case should be transferred to the
United States District Court for the Central District of
California on forum non conveniens grounds, noting that the work
product in dispute is in California as are the majority of
potential witnesses and the access to other sources of proof.

Plaintiff opposes Defendant's motion and filed its own
motion to remand relying on the dispute resolution clause in a
three page "purchase order acknowledgment" letter sent by
Plaintiff to Defendant on May 8, 2014, and signed by Defendant's
President, John Mountjoy, on May 9, 2014 (Letter Agreement).
ECF No. 13-7.  This letter set out the payment terms for the

---

screens and, for that reason, has withheld that payment.
Plaintiff counters that the screens were actually damaged by
Defendant.

Subcontact, specifying when deposits and final balances for the "Materials" and "Install" would be due.  That letter also includes two pages specifying various "Terms and Conditions." Among those Terms and Conditions is a "Disputes" clause which states that "[t]he parties hereby agree that the Maryland courts in Dorchester County, Maryland, shall have jurisdiction over the parties in any dispute concerning this agreement, the goods sold hereto or payment by Buyer to Seller in accordance herewith." Id. ¶ 11.  The Letter Agreement also contains the following integration clause:

> This purchase order acknowledgment, including the terms and conditions set forth below, shall constitute acceptance of a contract for sale between GKD-USA, Inc. (Seller) and Buyer (designated on the face hereof) which shall be made in and governed by the laws of the State of Maryland.  Buyer agrees that this document shall constitute the entire contract between GKD-USA, Inc. and Buyer and that an order for goods referred to herein of the delivery of goods referred to herein, or receipt thereof shall be conclusively deemed to constitute an acceptance in strict accordance with the terms hereof, notwithstanding any prior course of dealing, custom or usage of trade, or course of performance and notwithstanding that for its own convenience or otherwise.  Buyer may utilize its own forms or other written instruments purporting to evidence the transactions provided herein, provided that such forms or instruments do not vary, or are not contrary to, any of the terms and conditions set forth in this purchase order acknowledgment.

ECF No. 13-7 ¶ 1 (emphasis added).  In addition to signing and dating the letter, Mountjoy also initialed both pages of the Terms and Conditions.

Courts have consistently held that, where a party has signed an agreement with a mandatory forum selection clause[2] requiring the parties to litigate disputes exclusively in a particular state court, that party has waived the right to remove an action from that court.  See, e.g., FindWhere Holdings, Inc. v. Sys. Env't Optimization, LLC, 626 F.3d 752, 753 (4th Cir. 2010); Fastmetrix, Inc. v. ITT Corp., 924 F. Supp. 2d 668 (E.D. Va. 2013); Insight Holding Group, LLC v. Sitnasuak Native Group, 685 F. Supp. 2d 582, 590 (E.D. Va. 2010); Weener Plastics, Inc. v. HNH Packaging, LLC, Civ. No. 08-496, 2009 WL 2591291, at *8 (E.D.N.C. Aug. 19, 2009).  Thus, if the "Disputes" clause in the Letter Agreement is controlling, then the case must be remanded.

It is also long and well established that "where two written contracts differ in terms or conditions regarding the same subject matter, the terms or conditions of the later contract supersede those of the earlier contract."  United States v. Gilman, 360 F. Supp. 828 (D. Md. 1973); see also, Jaquar Land Rover N. Am., LLC v. Manhattan Imported Cars, Inc., 477 F. App'x 84, 88 (4th Cir. 2012) (stating that where a later-executed agreement contains an enforceable integration clause,

---

[2] Notably, Defendant does not suggest that the clause in the Letter Agreement is not mandatory, it simply argues that "the Subcontract forum selection clause contains the same 'mandatory' language . . . ."  ECF No. 19 at 20 n.8.

that agreement "annuls any prior agreements addressing the same subject matter because the agreements conflict and cannot be construed together."). Plaintiff contends that the Letter Agreement is the last agreement between the parties and thus, its forum clause controls. Defendant responds that, while it agrees that Plaintiff has properly stated the relevant law, it contends that the Subcontract was the last-executed agreement and, thus, its forum clause controls. ECF No. 19 at 22. The Court disagrees.

Defendant supports its contention that the Subcontract was the last-executed agreement with the affidavits of Steve Stone, Defendant's Chief Operating Officer. In his affidavit submitted with Defendant's Motion to Dismiss, Mr. Stone states that he has "personal knowledge that the [Letter Agreement] was signed on May 9, 2014, in South El Monte, California, by [Defendant's] President and that the Subcontract Agreement was signed by [Defendant's] President, also on May 9, 2014, in South El Monte, California." First Stone Aff., ECF No. 13-3 ¶ 6. In a second affidavit submitted with Defendant's opposition to Plaintiff's motion to remand, Mr. Stone repeats the representation that Mr. Mountjoy signed both documents on May 9, 2014, but now adds, "[s]pecifically, on May 9, 2014, [Defendant's] President first countersigned the [Letter Agreement], and then countersigned the Subcontract Agreement from [Defendant's] offices in South El

Monte, California."   Second Stone Aff., ECF No. 19-2 ¶ 7.   He
then represents that the fully executed Subcontract Agreement,
the Letter Agreement, and Defendant's check for the deposit on
the screens were sent to Plaintiff via FedEx.   Id. ¶ 8.

As Plaintiff observes, there are several somewhat
troublesome aspects to Defendant's conclusion that the
Subcontract is the last executed agreement.   First, Mr. Stone
does not explain the nature of his "personal knowledge" of the
precise order in which Mr. Mountjoy executed the documents, nor
does Defendant explain why Mr. Mountjoy himself did not submit
an affidavit attesting to the order in which he did so.   Unless
Mr. Stone was present with Mr. Mountjoy when he signed the
documents he would not have "personal knowledge" of that detail,
nor does he offer any explanation as to why he remembers that
specific detail more than a year later.   Defendant suggests that
it is somehow significant that Plaintiff "does not present any
evidence to dispute that the Subcontract was signed after the
[Letter Agreement]," ECF No. 19 at 20, but, of course, there is
no way that Plaintiff could have knowledge or evidence as to
what took place at the other end of the country.   Although
relating to a somewhat minor detail, the accuracy of Mr. Stone's
personal knowledge is called further into question in that,
while he represents that the executed Letter Agreement was
transmitted to Plaintiff with the Subcontract and the check, the

May 9, 2014, Transmittal form indicates that only the
Subcontract and check were sent.  ECF No. 19-4.

Plaintiff argues further that the order in which Mr.
Mountjoy may have signed the documents on May 9 does not
ultimately matter.  The Subcontract, which was drafted by
Defendant, clearly states that it "is made and entered into on
the Twenty-Ninth day of April, 2014."  ECF No. 13-6 at 1
(emphasis added).  Furthermore, in the paragraph immediately
above the signatures, the Subcontract states, "[t]he Parties
hereto have executed this Agreement for themselves, their heirs,
executors, successors and assigns, and administers, on the date
set forth above."  Id. at 3 (emphasis added).  Defendant
suggests that the Court should simply ignore the date specified
in the Subcontract because there is "no credible evidence" that
the parties intended the Subcontract to be effective on that
date.  ECF No. 19 at 21.

As to which time constitutes the effective date of the
Subcontract – the date on which the Subcontract was allegedly
signed by Mr. Mountjoy or the date which the Subcontract
identifies as the date it was entered into – both parties rely
on Canaras v. Lift Truck Services, Inc., 322 A.2d 866 (Md.
1974).  In language relied upon by Plaintiff, the Maryland Court
of Appeals held that,

> [p]arties to a contract may execute an agreement on
> one date and provide that all the rights, obligations
> and liabilities thereto will attach respectively as of
> a retroactive date.  Such agreements have been held to
> be neither void nor objectionable.  The parties may
> similarly provide at the time of its execution that
> the contract is entered into 'as of' an earlier date
> than that on which it was in fact executed; such
> agreements are then effective retroactively as to the
> earlier date and the parties are bound accordingly.

322 A.2d at 872 (citations omitted).  Plaintiff also cites

Canaras for the proposition that it is "improper for the court

to rewrite the terms of a contract, or draw a new contract for

the parties, when the terms thereof are clear and unambiguous,

simply to avoid hardships . . . [W]here a contract is plain as

to its meaning there is no room for construction and it must be

presumed that the parties meant what they expressed."  Id. at

873 (citations and internal quotations omitted).

     To avoid the application of the language that it placed in

the Subcontract, Defendant cites Canaras for the proposition

that, "[u]nder Maryland law, if there is no credible evidence

that the parties to an agreement intended it to be effective

from the date on its face, then the agreement is to take effect

on the date of signature, or execution, which is 'the time when

the last act necessary for its formation occurred.'"  ECF No. 19

at 21 (quoting Canaras, 322 A.2d at 872).  That is not an

accurate reflection of the holding in Canaras as it ignores the

presumption, noted above, that "the parties meant what they

expressed."  That is the general rule.  In Canaras, however, the court recognized that, under the particular circumstance of the signing of the contract at issue, giving force to the effective date stated in the contract created "uncertainty and ambiguity concerning the intention of the parties" because of the relationship of that effective date and another provision in the contract.  322 A.2d at 873-74.[3]  Only for that reason did the court look outside of the contract to discern the true intention of the parties.  Here, the Court finds no similar uncertainty or ambiguity.

Defendant raises several other arguments that are equally unavailing.  Defendant makes much of the fact that the Subcontract was 29 pages in length and the Letter Agreement only three.  The Court notes that many of those 29 pages are simply "General Subcontract Provisions," not specific to this Subcontract.  ECF No 16-1, 5-19.  Regardless, Defendant cites no authority that page length determines preeminence.  Defendant also argues that the Letter Agreement only pertains to the sale of the screens, not their installation, and that "the phase allegedly governed by the [Letter Agreement's] terms and

---

[3] Specifically, there was a provision in the contract that, unless notice of non-renewal of this employment contract was given by a particular date, the one year employment contract would be automatically extended by another five years.  By the time that the contract was actually signed, the period of time required for notice of non-renewal had already expired.  272 Md. at 874.

conditions ended when the product arrived in California."  ECF

No. 19 at 19.  The Letter Agreement, however, references both

"Materials" and "Install."  ECF No. 13-7 at 1.

Finally, Defendant relies on cases extolling the strong

public policy favoring arbitration.  ECF No. 19 at 29-30.  While

there is a "presumption in favor of arbitration," that

presumption applies to questions concerning the scope of an

arbitration clause, but "the presumption does not apply to

disputes concerning whether an agreement to arbitrate has been

made."  Applied Energetics v. NewOak Capital Mkts., LLC, 645

F.3d 522, 526 (2nd Cir. 2011).  The Fourth Circuit decision in

UBS Fin. Servs., Inc. v. Carilion Clinic, 706 F.3d 319 (4th Cir.

2013), relied upon by Defendant, cites Applied Energetics with

approval for its finding that an adjudication clause displaced

an arbitration clause where "'[b]oth provisions are all-

inclusive, both are mandatory, and neither admits the

possibility of the other.'"  706 F.3d at 329 (quoting Applied

Energetics, 645 F.3d at 525).[4]  That is equally true of the

provisions at issue here.

---

[4] At issue in UBS Financial was whether a forum selection clause
in a broker-dealer agreement superseded, displaced, or waived a
statutory arbitration provision.  The forum selection clause
provided that:

> "The parties agree that all actions and proceedings
> arising out of this Agreement or any of the
> transactions contemplated hereby shall be brought in
> the United States District Court in the County of New

For these reasons, the Court concludes that Defendant
waived the right to remove this action to this Court and that
the case should be remanded to the Circuit Court for Dorchester
County.  Plaintiff has also requested that the Court, pursuant
to 28 U.S.C. § 1447(c), award attorneys' fees and expenses
incurred as a result of Defendant's removal of this action.
"Absent unusual circumstances, courts may award attorney's fees
under § 1447(c) only where the removing party lacked an
objectively reasonable basis for seeking removal.  Conversely,
when an objectively reasonable basis exists, fees should be
denied."  Martin v. Franklin Capital Corp., 546 U.S. 132, 141,
(2005).  Whether to award costs and expenses is in this Court's
discretion, and there is no presumption either for or against
such an award.  Id. at 139.  While the Court has found that

---

York.  To the extent permitted by law, each of the
parties hereto also irrevocably waives all right to
trial by jury in any action, proceeding, or
counterclaim arising out of this Agreement or the
transactions contemplated hereby."

706 F.3d at 329 (emphasis added in UBS Financial).  Although the
court opined that "one would reasonably expect that a clause
designed to supersede, displace or waive arbitration would
mention arbitration," id., the decision turned on the clause's
reference to "actions and proceedings" and the "right to trial
by jury."  The court found the natural reading of this clause
simply to mean that "any litigation arising out of the agreement
would have to be brought in New York County and that as to any
such action or proceeding, a jury trial would be waived."  Id.
at 330.

removal was improper, it does not find that the removal was objectively unreasonable.

A separate order will issue.


_____/s/_____
William M. Nickerson
Senior United States District Judge


DATED: August 27, 2015